DOMINIC A. QUILLER, STATE BAR #274057
McCUNE & HARBER, LLP
515 South Figueroa Street, Suite 1100
Los Angeles, California 90071
Telephone: (213) 689-2500
Facsimile: (213) 689-2501
dquiller@mccuneharber.com

Attorneys for Defendants, CITY OF PASADENA and CHIEF JOHN E. PEREZ [Fee exempt public entity and public entity employee, pursuant to *Government Code* §6103]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH ANDERSON; LORENA MCCAIGUE; <br><br> Plaintiffs, <br><br> v. <br><br> CHIEF JOHN E. PEREZ; CITY OF PASADENA, <br><br> Defendants. | Case No: 2:21-CV-4290 (JAK-GJS) <br> Assigned to Judge John A. Kronstadt and Magistrate Judge Gail J. Standish <br> (Complaint filed on May 23, 2021) <br><br> DATE: August 23, 2021 <br> TIME: 8:30 a.m. <br> CTRM.: 10B <br><br> **NOTICE OF MOTION AND *CODE OF CIVIL PROCEDURE* §425.16 ANTI-SLAPP MOTION TO STRIKE THE PLAINTIFFS' COMPLAINT BY CITY OF PASADENA AND CHIEF JOHN E. PEREZ; REQUEST FOR ATTORNEY'S FEES IN THE AMOUNT OF $5,400.00; DECLARATIONS OF DOMINIC A. QUILLER AND CHIEF PEREZ; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS** <br><br> Trial Date: Not set |

TO EACH PARTY AND TO EACH PARTY'S COUNSEL OF RECORD:

YOU ARE HEREBY NOTIFIED that on **August 23, 2021** at **8:30 a.m.**, or as soon thereafter as the matter may be heard in Courtroom **10B**, of this Court, located at 350 West First Street, Los Angeles **California 90012**, defendants  CITY OF PASADENA and CHIEF JOHN E. PEREZ ("defendants") will move pursuant to *Code*

-1-

*of Civil Procedure* §425.16 to strike the plaintiffs' Complaint ("FAC") and defendants requests attorney's fees in the amount of $5,400.00.

This motion is brought on the grounds that the Complaint arises from Chief Perez' publishing a News Release regarding a matter of public concern; plaintiffs' causes of actions lack merit, and thus the Complaint should be stricken and this Court should award $5,400.00 in favor of defendants.

The motion will be based upon this Notice, the attached Memorandum of Points and Authorities, declarations and exhibits, and the records and files in this action.

DATED:       July 21, 2021                                      McCUNE & HARBER, LLP

By: _____
DOMINIC A. QUILLER, ESQ.
Attorneys for Defendants, CITY OF
PASADENA and CHIEF JOHN E. PEREZ

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-2-

**TOPICAL INDEX**

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

**PAGE**

I.  SUMMARY OF FACTS AND ARGUMENT ....................................................................7

II.  STANDARD FOR GRANTING AN ANTI-SLAPP MOTION ..............................................10

III.  THE ENTIRETY OF THE COMPLAINT ARISES OUT OF CHIEF PEREZ' PUBLICATION OF THE NEWS RELEASE ON THE INTERNET ...............................10

IV.  PLAINTIFFS' STATE LAW CLAIMS CONTAINED IN CAUSES OF ACTION SIX THROUGH TEN MUST BE DISMISSED FOR FAILURE TO FILE A TIMELY TORT CLAIM ............................................................................................................................14

V.  THE SEVENTH AND EIGHTH CAUSES OF ACTION FOR INVASION OF PRIVACY AND PUBLIC DISCLOSURE OF PRIVATE FACTS FAIL BECAUSE PLAINTIFFS DID NOT HAVE AN EXPECTATION OF PRIVACY ONCE THEY FILED THEIR TORT CLAIMS ...................................................................................................................15

VI.  DEFENDANTS DID NOT VIOLATE *GOVERNMENT CODE* §6254.21 AND THUS THE NINTH CAUSE OF ACTION LACKS MINIMAL MERIT ..........................................18

   A.  CHIEF PEREZ..........................................................................................................18

   B.  THE CITY ................................................................................................................19

VII.  THE INDIVIDUAL DEFENDANTS DID NOT VIOLATE *CIVIL CODE* §52.1 (7TH COA) ............................................................................................................................................19

VIII.  PLAINTIFFS' FIRST CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION LACKS MINIMAL MERIT..................................................................20

   A.  THE NEWS RELEASE WAS NOT IN RETALIATION FOR THE TORT CLAIMS......................................................................................................................21

   B.  THERE WAS NO CLEARLY ESTABLISHED RIGHT MAKING AGAINST POSTING MATTERS OF PUBLIC CONCERN IN A PUBLIC FORUM .............22

IX.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AGAINST THE SECOND CAUSE OF ACTION.....................................................................................22

X.  PLAINTIFFS' STATE CREATED DANGER CAUSE OF ACTION (3RD COA) MUST FAIL BECAUSE THE DEFENDANTS DID NOT AFFIRMATIVELY PLACE PLAINTIFFS IN ANY DANGER ..................................................................................23

-3-

**XI.    THE FOURTH AND FIFTH CAUSES OF ACTION LACK MINIMAL MERIT BECAUSE THE PLAINTIFFS HAVE NOT ESTABLISHED A CONSTITUTIONAL VIOLATION** ................................................................................................**26**

**XII.   ALLEGATIONS REGARDING THE CITY'S CPRA RESPONSE ARE BARRED FOR FAILURE TO FILE A TIMELY CLAIM FOR DAMAGES**...................................................**27**

**XIII.  THIS COURT SHOULD AWARD $5,400.00 IN ATTORNEY'S FEES IN FAVOR OF THE DEFENDANTS AND AGAINST THE PLAINTIFFS**...................................................**27**

**XIV.   CONCLUSION** ................................................................................................**28**

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

-4-

## TABLE OF AUTHORITIES

**PAGE**

Cases

*American Academy of Pediatrics v. Lungren*
(1997) 16 Cal.4th 307, 334, 66 Cal.Rptr.2d 210, 940 P.2d 797 ...........................................16

*American Humane Ass'n v. Los Angeles Times Communications*,
92 Cal.App.4th 1095, 1103 (2001) .........................................................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662, 677 (2009)..........................................................................................................27

*Brittain v. Hansen*,
451 F.3d 982, 991 (9th Cir. 2006) ...........................................................................................23

*Capp v. Cty. of San Diego*,
940 F.3d 1046, 1053 (9th Cir. 2019) .......................................................................................21

*Cardenas v. Cty. of Tehama*,
476 F.Supp.3d 1055, 1065-66 (E.D. Cal. 2020) .....................................................................24

*Castro v. Cty. of Los Angeles*,
833 F.3d 1060, 1073 (9th Cir. 2016) .......................................................................................26

*Collondrez v. City of Rio Vista*,
61 Cal.App.5th 1039, 1044-45 (2021), <u>review denied</u> (June 30, 2021) .......................9, 11, 12, 22, 27

*Damon v. Ocean Hills Journalism Club*,
85 Cal.App.4th 468, 476-477 (2000)........................................................................................11

*DiCampli-Mintz v. Cty. of Santa Clara*
55 Cal. 4th 983, 990-91 (2012)................................................................................................14

*Guatay Christian Fellowship v. Cty. of San Diego*,
670 F.3d 957, 983 (9th Cir. 2011) ...........................................................................................22

*Hill v. National Collegiate Athletic Assn* (1994)
7 Cal.4th 1, 40, 26 Cal.Rptr.2d 834, 865 P.2d 633 ................................................................17

*J.M. v. Huntington Beach Union High Sch. Dist.*,
2 Cal.5th 648 (2017) ................................................................................................................14

*Kennedy v. City of Ridgefield*,
439 F.3d 1055, 1063 (9th Cir. 2006) ..................................................................................24, 25

*Lafayette Morehouse, Inc. v. Chronicle Pub. Co.*,
39 Cal.App.4th 1379, 1383 (1995) ..........................................................................................27

*Lowry v. Port San Luis Harbor Dist.*, ))
270 Cal. Rptr. 3d 264, 270 (2020), <u>review filed</u> (Nov. 25, 2020) ........................................14

*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation*
(2008) 158 Cal.App.4th 1075, 1086, 70 Cal.Rptr.3d 614........................................................13

*Martinez v. City of Clovis*,
943 F.3d 1260, 1270-71 (9th Cir. 2019) ..................................................................................24

*Monell v. Department of Social Services*,
436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)..............................................................26

*Navellier v. Sletten*,
29 Cal.4th 82, 88-89 (2002)..................................................................................................9, 10

*People v. Ovieda*,
7 Cal.5th 1034, 1042 (2019) ......................................................................................................7

*People v. Smith*,
46 Cal.App.5th 375, 384 (2020) .................................................................................................7

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

-5-

*Poway Unified Sch. Dist. v. Superior Ct. (Copley Press)*,
    62 Cal.App.4th 1496 (1998) ......................................................................................... 16, 17
*Reese v. Cty. of Sacramento*,
    888 F.3d 1030, 1040 (9th Cir. 2018) ................................................................................. 19
*Register Div. of Freedom Newspapers, Inc. v. County of Orange*,
    158 Cal.App.3d 893, 902 (1984) ..................................................................................... 9, 17
*S.B. v. Cty. of San Diego*,
    864 F.3d 1010, 1013 (9th Cir. 2017) ................................................................................. 20
*San Diegans for Open Government v. San Diego State University Research Foundation*
    (2017) 13 Cal.App.5th 76, 101, 218 Cal.Rptr.3d 160 ......................................................... 13
*Sanders v. United States*,
    141 S.Ct. 1646, 1648 (2021) .............................................................................................. 7
*Shirk v. Vista Unified School Dist.*
    42 Cal.4th 201, 208 (2007) .............................................................................................. 14
*Sonoma Media Investments, LLC v. Sup.Ct. (Flater)*,
    34 Cal.App.5th 24, 33-34 (2019) ...................................................................................... 11
*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.*,
    122 Cal.App.4th 1049, 1055-1056 (2004) ........................................................................... 10
*Tamas v. Dep't of Soc. & Health Servs.*,
    630 F.3d 833, 842 (9th Cir. 2010) .................................................................................... 21

## Statutes

*Cal. Gov. Code* §911.2(a) ......................................................................................... 14
*Cal. Gov. Code* §945.4 ............................................................................................... 14
*Code of Civil Procedure* §425.16(e) ............................................................................ 10
*Government Code* §6254.21 ........................................................................................ 18
*Government Code* §6258 ............................................................................................ 27
*Government Code* §810 *et seq* ................................................................................. 14
Government Code, Section 910 ..................................................................................... 16
Welfare and Institutions Code section 676 ....................................................................... 17

## Other Authorities

Cal. Const. Art. I, § 3(b)(7) ...................................................................................... 13
U.S. Const. amend. XIV, §1 ........................................................................................ 23

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF FACTS AND ARGUMENT

On July 22, 2019, a gentleman identifying himself as Jose Santerio called 911, which routed his call to the City's Police Department.  During that call, Santerio indicated that he was going to commit suicide.  Santerio informed the dispatcher that he was presently at the address 652 South Lake Avenue, No. 2, Pasadena, California.  Apparently, the plaintiffs, not Santerio, lived at that address (Exhibit A at ¶¶19-23; Perez Decl. at ¶4; Exhibit C; Exhibit G at pp. 22:21-22:23, 74:12-75:20, 89:15-90:17, 94:15-95:5, 96:1-8:6).

In response to the 911 call from Santerio, Officers Torres, Cybulski, and Petrella responded to the residence.  Officer Torres arrived first.  Once there, Officer Torres announced himself and knocked on the door several times.  Having received no answer, Officer Torres broke open the front door and then "swept" the house.  Shortly thereafter, and while Officer Torres was still inside the residence, Officers Cybulski and Petrella came to the residence to assist.  Later, Sergeant Bzdigian, the officers' supervisor, arrived at the residence to provide assistance (*See* Exhibit A at ¶¶19-23; Perez Decl. at ¶5; Exhibit C; Exhibit G at pp. 22:21-22:23, 74:12-75:20, 89:15-90:17, 94:15-95:5, 96:1-8:6).

Based upon the 911 call indicating that Santerio was at the residence and going to commit suicide, the officers had an "objectively reasonable basis for believing that an occupant" was "seriously injured or threatened with such injury."" *Sanders v. United States*, 141 S.Ct. 1646, 1648 (2021); *People v. Ovieda*, 7 Cal.5th 1034, 1042 (2019) ("Lower federal courts have also recognized that a warrantless entry in response to an actively suicidal person may be justified to prevent injury"); *People v. Smith*, 46 Cal.App.5th 375, 384 (2020).  Accordingly, the officers acted lawfully when entering the residence (Perez Decl. at ¶6).

/ / /

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-7-

On or about June 15, 2020[1], the plaintiffs submitted respective Tort Claims against the City claiming that the actions by the aforementioned officers was unlawful. Because the Tort Claims were not submitted within six months of the July 22, 2019 incident, on July 28, 2020, the City returned the Tort Claims as untimely (Perez Decl. at ¶7; Exhibit B; Complaint at ¶16).

On June 29, 2020, Pasadena Now, a website that publishes local news, published a news article online regarding the July 22, 2019 incident. The article specifically referred to the allegations in the plaintiffs' Tort Claim, which falsely claimed that the City and its officers acted unlawfully in responding to the 911 that involved a potential active suicide (Perez Decl. at ¶9; Exhibit D).

In response to the recitation in the Pasadena Now article regarding the false allegations in the Tort Claims, on July 6, 2020, City of Pasadena Police Chief Eduard Perez ("Chief Perez") posted a News Release on www.cityofpasadena.net responding to the plaintiffs' false claims amplified and publicized by Pasadena Now. In so doing, Chief Perez wanted to ensure that the public had all of the facts regarding the July 22, 2019 incident, which had become a matter of public issue and/or an issue of public interest due to the plaintiffs' filing of their Tort Claims, the June 29, 2020 publication in Pasadena Now, and the ongoing debate regarding police reform in the wake of the George Floyd murder.

As is relevant, the News Release states:

"The City of Pasadena received two claims from an attorney asserting that the Constitutional Rights of two people were violated by Pasadena Police Officers. The Pasadena Police Department is releasing officer body worn camera and a '911' recording of the incident. The recordings detail what transpired on July 22, 2019 when the Police Department's Communications Center received a call from a despondent male, threatening suicide after losing a large sum of

_____

[1] The Complaint asserts that the Tort Claims were submitted June 11, 2020 (Compl. at ¶16). However, I am informed and believe that the City received the Tort Claims on June 15, 2020. The plaintiffs signed their Tort Claims on June 11, 2020 (See Exhibit C).

-8-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

money to an apparent scam.  The recordings can be accessed at the link provided below…

In conjunction with the current demands for reform of police agencies, it is important the Pasadena Police Department share with the public as much information as legally possible regarding police performance.  In releasing information, it is imperative the public have a complete view of critical incidents to understand the dynamics in their entirety, rather than a limited view.  Change is never easy, but as we continue to work towards better policing practices, the benefit to all will be significant." (Exhibit E; Exhibit G at 167-172).

Footage from the body worn cameras of the responding officers, as well as the subject 911 call, were attached as a link to the News Release (Perez Decl. at ¶¶10-11; Exhibit G at 167-172).

As a result of posting the News Release, the plaintiffs have sued the City and Chief Perez alleging 10 causes of action, all of which claim that the News Release was in retaliation for Chief Perez posting the News Release (Compl. at ¶18; Exhibit G at 167-172).  More specifically, the Complaint alleges that Chief Perez and the City are liable for publicly disclosing, as an act of retaliation, the plaintiffs' residential address and footage of the inside of their home depicted in the footage from the body worn cameras.  However, the Tort Claims submitted by the plaintiff specifically identify their address as 652 South Lake Ave., No. 2, Pasadena, CA 91106 (Exhibit C at p. 1; Perez Decl. at ¶8).  As a matter of law, however, **one who submits a tort claim has no reasonable expectation of privacy**.  *Register Div. of Freedom Newspapers, Inc. v. County of Orange*, 158 Cal.App.3d 893, 902 (1984).

Further, as a matter of law, the entirety of the Complaint arises out of Chief Perez' publication of the News Release (*Collondrez v. City of Rio Vista*, 61 Cal.App.5th 1039, 1044-45 (2021), review denied (June 30, 2021)).  In addition, each of the 10 causes of action lack minimal merit, including, among many other reasons, the plaintiffs had no expectation of privacy regarding the July 22, 2019 incident once they filed a Tort Claim.  According to *Navellier v. Sletten*, 29 Cal.4th 82, 88-89 (2002), an Anti-SLAPP motion to strike the entirety of a lawsuit must be granted if plaintiff's claim must (1) arise out of

-9-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

defendant's protected speech or petitioning; *and* (2) lack even minimal merit.  Therefore, defendants bring the instant Anti-SLAPP motion to strike.  Further, the defendants request attorney's fees in the amount of $5,400.00 as the "prevailing party."

## II.    STANDARD FOR GRANTING AN ANTI-SLAPP MOTION

The California Legislature has authorized a special motion to strike that may be filed against "SLAPP" (Strategic Lawsuits Against Public Participation) suits.  The anti-SLAPP motion is a procedural remedy, designed to quickly identify and dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.*, 122 Cal.App.4th 1049, 1055-1056 (2004).  *Code of Civil Procedure* §425.16, otherwise known as the Anti-SLAPP statute, reads in pertinent part:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike…"
> *Cal. Civ. Proc. Code* §425.16(b)(1).

Courts use a two-step process for determining whether an action or a claim is a SLAPP suit subject to a special motion to strike.  Plaintiff's claim must (1) arise out of defendant's protected speech or petitioning; *and* (2) lack even minimal merit. *Navellier v. Sletten*, 29 Cal.4th 82, 88-89 (2002).

## III.    THE ENTIRETY OF THE COMPLAINT ARISES OUT OF CHIEF PEREZ' PUBLICATION OF THE NEWS RELEASE ON THE INTERNET

As will be further discussed, defendants have met the first prong of the Anti-SLAPP statute as the entirety of the lawsuit is based on publication of the News Release on the internet.  According to *Code of Civil Procedure* §425.16(e):

-10-

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

"As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Preliminarily, the News Release was published on the City's website, www.cityofpasadena.net, a quintessential public forum.  *Sonoma Media Investments, LLC v. Sup.Ct. (Flater)*, 34 Cal.App.5th 24, 33-34 (2019) (newspaper and website are public forums because public can access them; irrelevant that public cannot *participate* in forums); *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 476-477 (2000) (newsletter published to members of homeowners association constituted a "public forum" even if access was selective and limited) (Perez Decl. at ¶¶10-11; Exhibit E; Compl. at ¶18; Exhibit G at 167-172).

In *Collondrez v. City of Rio Vista*, 61 Cal.App.5th 1039, 1044-45 (2021), review denied (June 30, 2021), "then-Police Officer John Collondrez was dispatched to respond to a hit and run accident.  According to an internal affairs investigation, Collondrez falsified his report of the incident and his investigation, arrested a suspect without a warrant or probable cause, used excessive force in effecting the arrest, applied a carotid control hold on the suspect, and failed to request medical assistance for the suspect or inform the jail that he had applied a carotid control hold."

"Beginning in January 2019 the City received a number of media requests under the CPRA for records related to Collondrez's disciplinary action.  The City produced the responsive records from Collondrez's personnel file and gave Collondrez prior notice of

-11-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

some, but not all, of the disclosures. Various media outlets subsequently reported on the August 2017 incident, the misconduct allegations, and the internal affairs investigation. One article reported Collondrez's current employer, Uber, was concerned about the August 2017 incident and would "'take appropriate action'" after reviewing the matter. In February 2019 Uber fired Collondrez, citing to the media reports about the August 2017 incident.

Collondrez sued the City and Chief Dailey[2] for breach of contract, invasion of privacy, interference with prospective economic advantage, and intentional infliction of emotional distress. The City demurred and filed a simultaneous anti-SLAPP motion to strike all four causes of action." *Id.* at 1046.

In finding that the plaintiff's lawsuit satisfied the first prong of the Anti-SLAPP statute, the Court held and reasoned:

"Applying these principles, we conclude Collondrez's complaint arises from protected speech as each cause of action is fundamentally premised on the City's release of his personnel information to media outlets. That Collondrez alleges the City also violated his contractual pre-disclosure notice right does not change the fact that the harmful act at the heart of the complaint, the act that allegedly cost him his job at Uber and resulted in other economic and emotional harm, is the publication of his personnel information." *Id.* at 1049.

"Alternatively, Collondrez contends the disclosures were not protected activity under the anti-SLAPP statute because they were not made "before ... [an] official proceeding" (§425.16, subd. (e)(1)) or "in connection with an issue under consideration or review by ... [an] official proceeding." (§425.16, subd. (e)(2).) Even if that were so, a question we do not decide here, it does not help him.

The disclosures were made to journalists pursuant to CPRA requests, were published in news media, and concerned **police misconduct − undoubtedly an issue of public interest**. They therefore fall within section 425.16, subdivisions (e)(3)(statements "made in a ... public forum in connection with an issue of public interest) and (e)(4) (catch-all category for "any other conduct" in furtherance of free speech rights "in connection with a public issue or an issue of public interest.")

-12-

"Reporting the news [qualifies] as an exercise of free speech. [Citation.]  Reporting the news requires the assistance of newsgathering and other related conduct and activity, which are acts undertaken in furtherance of the news media's right to free speech. Such conduct is therefore protected conduct under the anti-SLAPP statute."  (*San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 101, 218 Cal.Rptr.3d 160; *Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1086, 70 Cal.Rptr.3d 614 [state agency's release of investigation results to media protected by section 425.16, subd. (e)(3)]; see also Cal. Const. Art. I, § 3(b)(7) [compliance with CPRA ensures public access to writings of public officials and agencies].)."  *Id*. at 1049-50.

As indicated, the News Release was posted in a quintessential public forum, on the City's website, www.cityofpasadena.net (Perez Decl. at ¶¶10-11; Exhibit E; Compl. at ¶18; Exhibit G at 167-172).  In addition, the News Release involved a police response to a 911 call, a false 911 call which is a matter of public safety, and the plaintiffs' allegations of police misconduct (Perez Decl. at ¶¶10-11; Exhibit E; Compl. at ¶18; Exhibit G at 167-172).  Indeed, since at least the untimely murder of George Floyd, alleged police misconduct, and transparency related to policing, is "undoubtedly an issue of public interest." (Perez Decl. at ¶11).  To be sure, as is relevant, Chief Perez wrote in the News Release:

"The City of Pasadena received two claims from an attorney asserting that the Constitutional Rights of two people were violated by Pasadena Police Officers.  The Pasadena Police Department is releasing officer body worn camera and a '911' recording of the incident.  The recordings detail what transpired on July 22, 2019 when the Police Department's Communications Center received a call from a despondent male, threatening suicide after losing a large sum of money to an apparent scam.  The recordings can be accessed at the link provided below…

In conjunction with the current demands for reform of police agencies, it is important the Pasadena Police Department share with the public as much information as legally possible regarding police performance.  In releasing information, it is imperative the public have a complete view of critical incidents to understand the dynamics

-13-

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

in their entirety, rather than a limited view. Change is never easy, but as we continue to work towards better policing practices, the benefit to all will be significant." (Perez. Decl. at ¶11; Exhibit E; Exhibit G at 167-172).

Further, the News Release was quite literally "reporting the news," which "qualifies as an exercise of free speech." Accordingly, defendants have satisfied the first prong of Section 425.16.

## IV. PLAINTIFFS' STATE LAW CLAIMS CONTAINED IN CAUSES OF ACTION SIX THROUGH TEN MUST BE DISMISSED FOR FAILURE TO FILE A TIMELY TORT CLAIM

With the Sixth through Tenth Causes of Action, the plaintiffs assert various state law claims. However, plaintiffs failed to comply with the California Government Claims Act, a prerequisite to bringing state law claims, and thus the Sixth through Tenth Causes of Action lack minimal merit.

As background, under the California Government Claims Act (*Government Code* §810 *et seq.*), a suit for damages may not be brought against a public entity, such as the City, unless a timely Tort Claim has first been presented to that public entity (*Cal. Gov. Code* §945.4; *Shirk v. Vista Unified School Dist.*, 42 Cal.4th 201, 208 (2007). A Claim must be presented within six months of accrual of a cause of action (*Cal. Gov. Code* §911.2(a)).

"Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity." (*Lowry v. Port San Luis Harbor Dist.*, 270 Cal.Rptr.3d 264, 270 (2020), review filed (Nov. 25, 2020)). "The filing of a claim is therefore an element of any cause of action against a public entity." (*DiCampli-Mintz v. Cty. of Santa Clara*, 55 Cal.4th 983, 990-91 (2012)). Failure to file a timely claim requires that any lawsuit be dismissed (*J.M. v. Huntington Beach Union High Sch. Dist.*, 2 Cal.5th 648 (2017)).

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-14-

In this case, the Complaint alleges that plaintiffs submitted a Tort Claim on June 11, 2020 as a result of the July 22, 2019 incident. However, this Complaint involves the July 6, 2020 News Release. The Complaint does not allege that plaintiffs filed a Tort Claim within six months of the News Release. Therefore, the state law claims in the Sixth through Tenth Causes of Action are barred as a matter of law and thus lack minimal merit.

V. **THE SEVENTH AND EIGHTH CAUSES OF ACTION FOR INVASION OF PRIVACY AND PUBLIC DISCLOSURE OF PRIVATE FACTS FAIL BECAUSE PLAINTIFFS DID NOT HAVE AN EXPECTATION OF PRIVACY ONCE THEY FILED THEIR TORT CLAIMS**

With the Seventh and Eighth Causes of Action, Intrusion into Private Affairs and Public Disclosure of Private Facts, the plaintiffs sue the defendants for allegedly publishing their address "and information" in the News Release. Defendants assume "information" refers to the footage from the body worn cameras which depict the inside of the plaintiffs' residence. The plaintiffs had no reasonable right to privacy and thus these claims lack minimal merit.

As indicated, on or about June 15, 2020, the plaintiffs submitted respective Tort Claims. Page 1 of these Tort Claims submitted by the plaintiff specifically identify their address as 652 South Lake Avenue, No. 2, Pasadena, CA 91106 (Perez Decl. at ¶¶7-8; Exhibit C at p. 1). On June 29, 2020, Pasadena Now, a website that publishes local news, published a news article online regarding the July 22, 2019 incident. The article specifically referred to the allegations in the plaintiffs' Tort Claim (Perez Decl. at ¶9).

Once the plaintiffs filed Tort Claims, the entirety of the July 22, 2019 incident became a "public record," and thus the plaintiffs themselves extinguished any privacy rights held in their "address and information." Further, the plaintiffs specifically

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

-15-

identified their own address thus extinguishing any right to privacy (*Poway Unified Sch. Dist. v. Superior Ct. (Copley Press)*, 62 Cal.App.4th 1496 (1998)).

According to *Poway*:

"The Public Records Act specifies that any public record in the possession of a state or local agency must be disclosed to any citizen unless an exemption applies." *Id.* at 1501.

"Public records" is defined in broad terms, to include:

"[A]ny writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§6252, subd. (d).)

This broad definition is designed to protect the public's need to be informed regarding the actions of government, as expressed both in the Public Records Act and in the open meeting requirements of the Ralph M. Brown Act." *Id.*

"Balanced against the public's right to know is the victim's right to privacy." *Id.*

"To initiate litigation against a public entity, it is well-established that a plaintiff must first file a claim under the Claims Act. [Government Code] Section 910 specifies the information to be included, some of which may implicate privacy concerns. Many public entities provide forms for this purpose." *Id.* at 1502.

"Here, harmonization supports the conclusion that Claims Act claim forms are not exempt from disclosure pursuant to section 6254, subdivision (b). A related statute, part of the Brown Act, expressly acknowledges the availability of the Claims Act claims themselves for public inspection, referencing the Public Records Act." *Id.* at 1503.

"Minors, as well as adults, possess a constitutional right of privacy under the California Constitution. (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 334, 66 Cal.Rptr.2d 210, 940 P.2d 797.) Proof of an invasion requires not only a legally protected privacy interest, but also a reasonable expectation of privacy in the circumstances, and conduct by the defendant constituting a serious invasion of privacy. (*Id.* at p. 330, 66 Cal.Rptr.2d 210, 940 P.2d 797; *Hill v. National Collegiate Athletic Assn* (1994) 7 Cal.4th 1, 40, 26

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

-16-

Cal.Rptr.2d 834, 865 P.2d 633.) Under the facts presented here, the second and third elements of a privacy claim are absent.

First, there has been no showing of any reasonable expectation of privacy under the circumstances.  While section 910 does require a claimant to provide some potentially private information, **generally, one who submits a tort claim has no reasonable expectation of privacy**.  (*Register Div. of Freedom Newspapers, Inc. v. County of Orange* (1984) 158 Cal.App.3d 893, 902, 205 Cal.Rptr. 92.)

Here in particular, … the victim's attorney participated in a press conference about the settlement."  *Id*. at 1505.

"Nor has the District established conduct by the Union-Tribune evincing a serious invasion of privacy.  The newspaper has a policy of protecting the identity of victims of sex crimes and juvenile offenders.  **The information is relevant to a legitimate and important competing public interest in ending school hazing practices potentially endangering many children**.  The importance of public scrutiny of proceedings involving serious juvenile crimes is recognized in Welfare and Institutions Code section 676, which allows members of the public to attend hearings involving serious crimes such as rape, sodomy or assault."  *Id*. at 1505-06.

As in *Poway,* once the plaintiffs submitted their Tort Claims, any expectation of privacy was extinguished as a matter of law.  Further, all documents related to the facts underlying the Tort Claim similarly no longer carried an expectation of privacy.  The body worn camera footage[2] and 911 call recording are public records (*See* Compl. at ¶¶22-31).  The plaintiffs disclosed their home address on page 1 of the Tort Claim, and on June 29, 2020, Pasadena Now published an article about the Tort Claim.  Further, Keith submitted a lengthy affidavit attached to the Tort Claim basically telling the public everything that was in the 911 call and on the body worn camera footage (Exhibit C at pp. 4-9).

As already indicated, as in *Poway*, policing is an issue of public interest.  Therefore, the Seventh and Eighth Causes of Action lack merit.

---

[2] There is an exemption for release of the body worn camera footage, not at issue in this motion.

-17-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

Anti-Slapp

## VI. DEFENDANTS DID NOT VIOLATE *GOVERNMENT CODE* §6254.21 AND THUS THE NINTH CAUSE OF ACTION LACKS MINIMAL MERIT

With the Ninth Cause of Action, plaintiffs assert a violation of *Government Code* §6254.21.  This cause of action lacks minimal merit.

Section  6254.21 reads:

"(a) No state or local agency shall post the home address or telephone number of any elected or appointed official on the Internet without first obtaining the written permission of that individual.

(b) No person shall knowingly post the home address or telephone number of any elected or appointed official, or of the official's residing spouse or child, on the Internet knowing that person is an elected or appointed official and intending to cause imminent great bodily harm that is likely to occur or threatening to cause imminent great bodily harm to that individual.  A violation of this subdivision is a misdemeanor. A violation of this subdivision that leads to the bodily injury of the official, or his or her residing spouse or child, is a misdemeanor or a felony."

### A.   CHIEF PEREZ

Chief Perez did not "intend[] to cause imminent great bodily harm that is likely to occur or threatening to cause imminent great bodily harm to that individual."  (Perez Dec. at ¶14).  Instead, the purpose of the News Release was to ensure that the public had all of the facts regarding the July 22, 2019 incident, which had become a matter of public issue and/or an issue of public interest due to the plaintiffs' filing of their Tort Claims, the June 29, 2020 publication in Pasadena Now, and the ongoing debate regarding police reform in the wake of the George Floyd murder (Perez Decl. at ¶¶9-11, 14).  Indeed, the plaintiffs' names were not mentioned, nor was their address written in the News Release.

Further, Chief Perez had no intent to wrongfully publish plaintiffs' address.  As indicated, it was the plaintiffs who made the July 22, 2019 incident a matter of public concern when they filed Tort Claims.  Plaintiffs placed their address on page 1 of their

-18-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

Tort Claims (Exhibit C). In other words, plaintiffs' address had been publicly available since June 15, 2019, when they filed their Tort Claims, three weeks before publication of the News Release, which itself did not identify their home address.

**B.    THE CITY**

As to the City, as applied through subdivision (a), again, when plaintiffs submitted their Tort Claims on June 22, 2019 and listed their home address, plaintiffs themselves made their address publicly available. Indeed, an article was published on the Internet on June 29, 2020 regarding their Tort Claims.

The published cases regarding Section 6254.21 do not indicate whether the City can be liable, or whether it is vicariously liable through the actions of its employee. Indeed, the City is an entity incapable of acting, so any liability is likely vicarious *vis-à-vis* Chief Perez. As indicated, Chief Perez is not liable for the News Release.

**VII.    THE INDIVIDUAL DEFENDANTS DID NOT VIOLATE *CIVIL CODE* §52.1 (7TH COA)**

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." (*Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018)).

The News Release was posted online, and was not directed to, or sent to, the plaintiffs by any City employee. As testified to by Keith during his deposition in the state case:

Q. How were you made aware of this Press Release?

A. I believe that somebody may have called and informed me of it.

Q. Somebody like a friend or somebodyfrom like the City or

A. I believe it was one of two things,either a friend called me, and told me about

-19-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

it, or I may have seen it on the internet.  I don't recall."  (Exhibit G at 167:20-168:4).

Q. Has any representative from the City contacted you about this Press Release? A. Never."  (Exhibit G at 169:25-170:2).

Therefore, by Keith's own admission, the posting of the News Release was not directed at or sent to plaintiffs, and thus plaintiffs cannot claim that the News Release was meant to intimidate or threaten them.

Moreover, Chief Perez posted the News Release not in response to the plaintiffs' Tort Claims or in retaliation for the filing thereof, but instead posted the News Release to provide transparency to the public regarding a matter of public concern (Perez Decl. at ¶¶10-14, 16).  Indeed, the article did not identify either of the plaintiffs by name (Exhibit G at 168:15-18; Perez Decl. at ¶16).  Accordingly, this cause of action lacks minimal merit.

## VIII.   PLAINTIFFS' FIRST CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION LACKS MINIMAL MERIT

With the First Cause of Action, the plaintiffs allege First Amendment Retaliation. However, Chief Perez is entitled to Qualified Immunity.  Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Rabinovitz v. City of Los Angeles*, 287 F.Supp.3d 933, 947 (C.D. Cal. 2018)).  Qualified immunity "is an affirmative defense against section 1983 claims."  (*Arce v. Children's Hosp. Los Angeles*, 211 Cal.App.4th 1455, 1473 fn 10 (2012)).

According to *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017), Courts use a two-step test to evaluate claims of qualified immunity:  (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. Courts may "apply the

-20-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

two-step analysis in any sequence [it] deem[s] appropriate." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010).

## A.   THE NEWS RELEASE WAS NOT IN RETALIATION FOR THE TORT CLAIMS

To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. "To ultimately "prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory \ animus' and the plaintiff's 'subsequent injury.'" Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." (*Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019).

The plaintiffs have alleged the first prong, that they engaged in a protected activity by submitting a Tort Claim. However, it is undisputed that the News Release was not in retaliation for filing the Tort Claim. Specifically, the Tort Claims were filed June 15, 2020. However, on June 29, 2020, Pasadena Now published an article publicizing these Tort Claims and publicizing the false information in those Tort Claims. It was in response to the publicly disseminated Pasadena Now article, not the Tort Claim itself, that caused Chief Perez to publish the News Release. The purpose of the News Release was not to retaliate against the plaintiffs. Instead, the purpose of the News Release was to ensure that the public had all of the facts regarding the July 22, 2019 incident, which had become a matter of public issue and/or an issue of public interest due to the plaintiffs' filing of their Tort Claims, the June 29, 2020 publication in Pasadena Now, and the ongoing debate regarding police reform in the wake of the George Floyd murder (Perez Decl. at ¶¶9-11, 16).

-21-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

Moreover, the News Release was not directed towards the plaintiffs. The News Release was posted online, did not mention the plaintiffs' names, and Keith admits that no City employee ever contacted plaintiffs, including taunts or threats, related to the News Release (Exhibit G at 167:20-168:4, 168:15-18, 169:25-170:2; Perez Decl. at ¶16).

**B.    THERE WAS NO CLEARLY ESTABLISHED RIGHT MAKING AGAINST POSTING MATTERS OF PUBLIC CONCERN IN A PUBLIC FORUM**

The appropriate qualified immunity question is, was it clearly established whether a Police Chief could post a News Release online concerning a matter of public concern concern?

As recent as March 16, 2021, the Court in *Collondrez v. City of Rio Vista*, 61 Cal.App.5th 1039, 1049-50, 275 Cal.Rptr.3d 895, 902 (2021), review denied (June 30, 2021) held that disclosing matters of public concern, including public records, to be posted in a news article is protected activity. Therefore, this Court should dismiss plaintiffs' First Cause of Action.

**IX.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AGAINST THE SECOND CAUSE OF ACTION**

The Complaint vaguely asserts a deprivation of procedural and substantive due process. To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011).

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government. The Court has repeatedly "spoken of the cognizable level of executive abuse of power as that which shocks the conscience." "[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense. Such

-22-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

conduct can be shown by "conduct intended to injure in some way unjustifiable by any government interest."

It is not enough to allege conscience shocking action, however. "As a threshold matter, 'to establish a substantive due process claim a plaintiff must show a government deprivation of life, liberty, or property.'" This is because "there is no general liberty interest in being free from capricious government action." Thus, in order to establish a constitutional violation based on substantive due process, plaintiffs must show both a deprivation of her liberty and conscience shocking behavior by the government." (*Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)).

Presumably, the liberty interest, although not stated in the cause of action, is a Right to Privacy. As indicated, however, plaintiffs have no right to privacy in the matters discussed in the News Release as a result of the filing of their Tort Claims. Moreover, the News Release could not possibly shock the conscience. To the contrary, Chief Perez' actions of being transparent on behalf of the City's Police Department should be lauded. Not required to do so, Chief Perez went above and beyond by publishing the News Release so that the public would have the full story first publicized on Pasadena Now.

## X.   PLAINTIFFS' STATE CREATED DANGER CAUSE OF ACTION (3RD COA) MUST FAIL BECAUSE THE DEFENDANTS DID NOT AFFIRMATIVELY PLACE PLAINTIFFS IN ANY DANGER

"The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." (U.S. Const. amend. XIV, §1). Because plaintiffs allege that Chief Perez deprived them of liberty by affirmatively placing them at greater risk of injury, plaintiffs' claims are rooted in the substantive component of the Due Process Clause.

The Due Process Clause is a limitation on state action and is not a "guarantee of certain minimal levels of safety and security." Simply failing to prevent acts of a private

-23-

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

party is insufficient to establish liability. "The general rule is that a state is not liable for its omissions" and the Due Process Clause does not "impose a duty on the state to protect individuals from third parties."

There are two exceptions to this general rule. First, a special relationship between the plaintiff and the state may give rise to a constitutional duty to protect. Second, the state may be constitutionally required to protect a plaintiff that it "affirmatively places ... in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *See also Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006) (holding that the officer "affirmatively created a danger to [the plaintiff] she otherwise would not have faced" by informing her assailant of the accusations her family had made against him before they "had the opportunity to protect themselves from his violent response to the news ... [thus] creat[ing] 'an opportunity for [him] to assault [the plaintiff] that otherwise would not have existed'"

To succeed on their claim, plaintiffs must establish three elements. First, they must show that Chief Perez' affirmative actions created or exposed them to an actual, particularized danger that they would not otherwise have faced. Second, they must show that the injury they suffered was foreseeable. Third, they must show that Chief Perez was deliberately indifferent to the known danger (*Martinez v. City of Clovis*, 943 F.3d 1260, 1270-71 (9th Cir. 2019)).

In *Cardenas v. Cty. of Tehama*, 476 F.Supp.3d 1055, 1065-66 (E.D. Cal. 2020):

"In *Okin*, *Pena,* and *Dwares* the state actor had direct contact with the third-party assailant, indicating − whether explicitly or implicitly − to them that no action would be taken to prevent, stop, or punish their misconduct. Further, the Second Circuit noted that it is the perpetrator's awareness of law enforcement's dismissive and indifferent attitude toward complaints that "nullifies the deterrent capacity of police response." *Okin*, 577 F.3d at 430.

Here, Plaintiffs allege law enforcement failed to respond to various reports against Neal; Plaintiffs do not, however, allege Neal was aware of these reports, nor of law enforcement's response, or lack

-24-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

thereof, to the reports.  The Complaint does allege one occasion on which a sheriff's deputy had contact with Neal wherein Neal admitted to shooting a gun.  While it is alleged the sheriff's deputy took no action, this single event is insufficient to establish an implicit prior assurance that should Neal perpetrate violence against others, law enforcement would not respond.

As for controlling authority, both parties cite *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006).  In *Kennedy*, the officer in question informed the assailant of a complaint made against him by his neighbor.  The officer knew of the assailant's violent history, including breaking and entering, and of the neighbor's fear of retribution.  That same night, the assailant broke into the neighbor's house, shot her, *1066 and shot and killed her husband.  The court found these facts sufficient to allege affirmative conduct on the part of the officer placing the neighbor in danger she would not have otherwise faced.  In Kennedy, unlike the allegations in the Complaints here, the officer took an affirmative action: contacting the assailant. The Complaints here do not allege any affirmative actions; the closest they come is alleging that unnamed officers threatened to arrest the individuals filing complaints against Neal.  While such a statement by officers is objectionable, it is insufficient to allege an affirmative act that placed the victims in a more dangerous position.  Regardless of this conduct, Neal was, and would have remained, a dangerous individual prone to violent behavior.  Further, the officers' failure to enforce the restraining orders or follow up directly with Neal regarding the complaints against him are examples of inaction, not affirmative conduct, and are insufficient to state a claim under the state created danger theory.

The Court need not reach the question of deliberate indifference because the Complaints fail to allege affirmative acts by Defendants placing Plaintiffs in danger.

Plaintiffs have not stated sufficient facts to allege a violation of the Fourteenth Amendment based on a state created danger theory, and so Defendants' Motion is GRANTED as to Plaintiffs' first cause of action for violation of due process. Because the defects described above could be cured by amendment, such dismissal is with leave to amend."

In this case, the plaintiffs do not allege any actual harm.  As a result, the Complaint fails to allege any communication between Chief Perez and any allege

-25-

assailant which is required to prove "affirmative acts." Instead, all Chief Perez is accused of doing is publishing a matter of public concern on the City's website. In fact, the Pasadena Now Article published three weeks before the News Release actually specifically identifies the plaintiffs by name (Exhibit D). Moreover, the plaintiffs themselves listed their name *and address* in their Tort Claims making that information public record. Further, Keith submitted an affidavit with his Tort Claim transcribing the entirety of the events on the 911 call and body worn cameras, which he laments Chief Perez should not have done (Exhibit C).

Further, the News Release does not even mention the plaintiffs by name – thus, Chief Perez, assuming that he knew that the plaintiffs were federal investigators, cannot be said to have been deliberately indifferent to any potential harm because he did not even identify the plaintiffs in the News Release. Accordingly, this cause of action lacks minimal merit.

## XI. THE FOURTH AND FIFTH CAUSES OF ACTION LACK MINIMAL MERIT BECAUSE THE PLAINTIFFS HAVE NOT ESTABLISHED A CONSTITUTIONAL VIOLATION

With the Fourth Cause of Action, the plaintiffs allege a *Monell* violation. "In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality may not be held liable for a § 1983 violation under a theory of respondeat superior for the actions of its subordinates. In order to establish municipal liability, a plaintiff must show that a "policy or custom" led to the plaintiff's injury. *Id.* at 694, 98 S.Ct. 2018. The Court has further required that the plaintiff demonstrate that the policy or custom of a municipality "reflects deliberate indifference to the constitutional rights of its inhabitants." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016).

The Fifth Cause of Action asserts a theory of "Supervisory Liability" under 42 USC §1983. As held by the US Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677

-26-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

(2009), "supervisory liability" is a misnomer because supervisors may not be held accountable for the misdeeds of their agents. Instead, "a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 676.

As discussed throughout this motion, the plaintiffs cannot establish that Chief Perez violated any aspect of the Constitution. Therefore, the plaintiffs cannot substantiate the Fourth of Fifth Causes of Action.

## XII. ALLEGATIONS REGARDING THE CITY'S CPRA RESPONSE ARE BARRED FOR FAILURE TO FILE A TIMELY CLAIM FOR DAMAGES

*Government Code* §6258 allows a plaintiff to file suit regarding an alleged failure to properly response to a request for public information. As indicated *supra*, however, the plaintiffs did not file a timely claim. Moreover, *Collondrez v. City of Rio Vista*, *supra*, indicates that a public employee is shielded from liability based on his or her response to a request for public information.

## XIII. THIS COURT SHOULD AWARD $5,400.00 IN ATTORNEY'S FEES IN FAVOR OF THE DEFENDANTS AND AGAINST THE PLAINTIFFS

The "prevailing defendant" on the motion to strike "shall be entitled" to recover his or her attorney fees and costs expended in preparing the Anti-SLAPP motion. *Cal. Civ. Proc. Code* §425.16(c); *Lafayette Morehouse, Inc. v. Chronicle Pub. Co.*, 39 Cal.App.4th 1379, 1383 (1995). A request for section 425.16(c) fees may be made at the time of the Anti-SLAPP motion. *American Humane Ass'n v. Los Angeles Times Communications*, 92 Cal.App.4th 1095, 1103 (2001).

Because the Anti-SLAPP motion should be granted, defendants are entitled to attorney's fees. As indicated in the Declaration of Dominic A. Quiller, defendants have

-27-

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

incurred $5,400.00 in preparing this motion.  This Court should award this amount in favor of defendants.

## XIV.  CONCLUSION

Based on the foregoing, this Court should grant defendants' Anti-SLAPP motion to strike and award $5,400.00 in attorney's fees.

DATED:      July 21, 2021              McCUNE & HARBER, LLP

By:_____
     DOMINIC A. QUILLER, ESQ.
Attorneys for Defendants, CITY OF PASADENA AND CHIEF JOHN E. PEREZ

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-28-